IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JPMORGAN CHASE BANK, N.A., individually and derivatively on behalf of MAL CORPORATION, | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) No. 07 C 2034<br>) |
| MAL CORPORATION, and MILTON A. LEVENFELD, | )<br>)<br>)<br>) |
| Defendants. | ) |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

For the reasons set forth below, plaintiff JPMorgan Chase Bank's Motion to Strike Defendant MAL Corporation's Affirmative Defenses (Dkt. No. 79) is granted in part and denied in part. MAL's Fourth and Sixth Affirmative Defenses are stricken, because they do not adequately set forth affirmative defenses to Chase's claims. MAL's First, Second, Third, Fifth, and Seventh Affirmative Defenses remain pending.

BACKGROUND

This court has previously set forth in detail the facts alleged in the First Amended Complaint. (*See* 10/31/2008 Order.) By way of background, the condensed version is presented here:

On December 4, 2006, defendant Milton A. Levenfeld ("Levenfeld") presented an

1

endorsed cashier's check in the amount of $375,890.00 to plaintiff JPMorgan Chase Bank, N.A. ("Chase") for deposit. The Check was made payable to defendant MAL Corporation ("MAL"), a corporation for which Levenfeld served as President. The Check was originated by an entity that had contacted Levenfeld through an unsolicited email, asking for assistance in facilitating an international transfer of funds and offering a 10% commission to anyone who would act as a "payment agent" for the entity. On behalf of MAL, Levenfeld had agreed to serve in this capacity.

On December 5, 2006, Chase made the proceeds of the deposit available for withdrawal. That same day, Levenfeld authorized a payment order in MAL's name for the transfer of approximately 90% of the Check's value to a Japanese bank. Chase accepted and executed the payment order, and debited MAL's account accordingly. On December 11, 2006, the Check was returned unpaid to Chase as unauthorized. Chase charged back the amount of the Check to MAL's account, which is now overdrawn by $338,155.32. At the time of the deposit, neither Levenfeld nor Chase is alleged to have known that the Check was illegitimate.

In its First Amended Complaint, Chase alleges claims against MAL for breach of contract (Count I), breach of indorser obligations and transfer warranties (Count II), right of charge back pursuant to 810 ILL. COMP. STAT. 5/4-214 and 12 C.F.R. 229.19 (Count III), and duty to pay payment order pursuant to UCC Article 4A (Count IV). Chase's claims against Levenfeld have been severed and stayed at this point in the proceedings. MAL has alleged seven affirmative defenses in its Answer, including: (1) unclean hands/*in pari delicto*; (2) estoppel; (3) inadequate notice; (4) set-off/ recoupment/unjust enrichment; (5) failure to mitigate damages; (6) failure of consideration/bad faith; and (7) waiver.

Now pending before the court is Chase's Motion to Strike Defendant MAL Corporation's Affirmative Defenses. (Dkt. No. 79.)

## LEGAL STANDARD

A legal argument constitutes an affirmative defense if it "rais[es] new facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all allegations in the complaint are true." BLACK'S LAW DICTIONARY 430 (7th ed. 1999). Under Rule 12(f), a court may strike from a pleading "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are generally disfavored because of their potential to cause delay; however, they will be granted where they serve to remove affirmative defenses that only add "unnecessary clutter" to a case. *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989).

"Courts apply a three-part test in examining the sufficiency of affirmative defenses under Rule 12(f); (1) whether the matter is properly pled as an affirmative defense; (2) whether the affirmative defense complies with Federal Rules of Civil Procedure 8 and 9; and (3) whether the affirmative defense can withstand a Rule 12(b)(6) challenge." *Rudzinski v. Metro. Life Ins. Co.*, No. 05 C 0474, 2007 WL 2973830, at *1 (N.D. Ill. Oct. 4, 2007). "Affirmative defenses will be stricken only when they are insufficient on the face of the pleadings," such that they do not meet the pleading requirements set forth in the Federal Rules of Civil Procedure. *Heller*, 883 F.2d at 1294.

As pleadings, affirmative defenses are required to set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a); *see Renalds v. S.R.G. Rest. Group*, 119 F. Supp. 2d 800, 802 (N.D. Ill. 2000). In reviewing a motion to strike,

3

"the court must accept all factual allegations as true and draw all reasonable inferences in favor of the pleader." *Renalds*, 199 F. Supp. 2d at 802. "[F]ederal courts adhere to a system of notice pleading, whereby parties need only notify the other side of the nature of their claims or defenses and need not plead with particularity." *Mobley v. Kelly Kean Nissan, Inc.*, 864 F. Supp. 726, 732 (N.D. Ill. 1993). This means that an affirmative defense need only articulate "a plausible set of underlying facts." *SEG Liquidation Co., LLC v. Stevenson*, No. 07 C 3456, 2008 WL 623626, at *2 (N.D. Ill. Mar. 6, 2008) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)).

## ANALYSIS

In a section entitled "Facts Common to All Defenses," MAL generally alleges that Chase "acted in bad faith and was negligent" in its interactions with MAL regarding the Check. (Def.'s Ans. & Affirmative Defenses, Dkt. No. 66 at 26-27.) Among other things, MAL alleges that Chase was in a superior position to warn its customers about "Nigerian" or "419" check schemes and to recognize such a scheme when it saw one. (*Id.*) MAL further alleges that "agents of Chase did recognize the indicia of such a scheme while processing the Check and/or wire transfer, and continued without taking appropriate action." (1st Affirmative Defense ¶ 1.) According to MAL, recognizable indicia of a "Nigerian" or "419" check scheme include the deposit of a check for significantly more money than was currently held in the victim's account and an immediate request to wire almost all of the funds thus deposited internationally. (2d Affirmative Defense ¶ 2.)

Chase argues that, as a matter of law, it cannot have proceeded in bad faith because "the honest actions taken by Chase, which comport with those prescribed under the UCC and Regulation CC establish Chase's good faith." (Pl.'s Mem. at 7.) Although Chase does not

4

directly say so, Chase appears to argue that MAL's arguments are not properly pled as affirmative defenses because they do not defeat Chase's statute-based claims—even if MAL's allegations are accepted as true.

1. <u>Counts II and III</u>

Counts II and III of the First Amended Complaint are statutory in nature, based on Illinois' adoption of the Uniform Commercial Code. *See* 810 ILL. COMP. STAT. 5/1-101, *et seq.* Common law principles of law and equity apply to such claims, "[u]nless displaced by the particular provisions of [the] Act." 810 ILL. COMP. STAT. ANN. 5/1-103 (West 1993 & Supp. 2008). Count II seeks damages for breach of indorser obligations and transfer warranties pursuant to 810 ILL. COMP. STAT. 5/3-415(a) and 810 ILL. COMP. STAT. 5/3-416, -417 (under Article 3) and Count III seeks damages under Chase's alleged right of charge back pursuant to 810 ILL. COMP. STAT. 5/4-214(a) (under Article 4). Both provisions indicate that Chase may recover funds under specified circumstances, as long as Chase proceeded in good faith. *See* 810 ILL. COMP. STAT. ANN. 5/3-416(b) (West 1993); 810 ILL. COMP. STAT. ANN. 5/4-214(a), cmt. 5 (West 1993). This is consistent with the Illinois UCC's general obligation of good faith, which applies to the Act as a whole. 810 ILL. COMP. STAT. ANN. 5/1-203 (West 1993). Article 4 also specifically notes that "[t]he effect of the provisions of this Article may be varied by agreement, but the parties to the agreement cannot disclaim a bank's responsibility for its lack of good faith or failure to exercise ordinary care or limit the measure of damages for the lack or failure." 810 ILL. COMP. STAT. ANN. 5/4-103(a) (West 1993).

The definition of "good faith" applicable to Articles 3 and 4 of the Illinois UCC is set

forth in Section 3-103(4). *See* 810 ILL. COMP. STAT. ANN. 5/3-103(a)(4) (West 1993); 810 ILL. COMP. STAT. ANN. 5/4-104(c) (West 1993 & Supp. 2008). This definition states that "'good faith' means honesty in fact and the observance of reasonable commercial standards of fair dealing." 810 ILL. COMP. STAT. ANN. 5/3-103(a)(4) (West 1993). To the extent Chase also has a responsibility to exercise ordinary care, as referenced in Article 4 at 810 ILL. COMP. STAT. 5/4-103(a), "ordinary care" is likewise defined as the "observance of reasonable commercial standards, prevailing in the area in which the person is located with respect to the business in which the person is engaged." 810 ILL. COMP. STAT. ANN. 5/3-103(a)(7) (West 1993); 810 ILL. COMP. STAT. ANN. 5/4-104(c) (West 1993 & Supp. 2008). Article 4 further specifies that:

> Action or non-action approved by this Article or pursuant to Federal Reserve regulations or operating circulars is the exercise of ordinary care and, in the absence of special instructions, action or non-action consistent with clearing-house rules and the like or with a general banking usage not disapproved by this Article, is prima facie the exercise of ordinary care.

810 ILL. COMP. STAT. ANN. 5/4-103(c) (West 1993).

Chase does not direct the court to any provisions from Article 4 of the Illinois UCC or any Federal Reserve regulations that specifically address a bank's duty of care in relation to a suspect "Nigerian" or "419" check scheme, thereby altering the applicable definitions of good faith and ordinary care in this context.[1] Chase does argue that other statutory provisions addressing a bank's interactions with a known fiduciary "govern the situation where a fiduciary endorses a check payable to his principal and deposits the check into the principal's account."

---

[1] Chase does cite 810 ILL. COMP. STAT. 4/210(a), (Pl.'s Mem. at 8), but this section only addresses the bank's security interest in certain proceeds when it has made funds provisionally available. It does not describe the circumstances under which a bank should (or should not) make provisional funds available for withdrawal in the first place.

(Pl.'s Mem. at 7) (citing 810 ILL. COMP. STAT. 5/3-307(b)(2)(iii) and the Illinois Fiduciary Obligations Act ("FOA"), 760 ILL. COMP. STAT. 65/1, *et seq*.). In such a situation, Chase contends the bank is only liable for a loss if it "has actual knowledge that the conduct constitutes a breach of fiduciary obligation or there is bad faith." (*Id.*) (citing *County of Macon v. Edgcomb*, 654 N.E.2d 598, 601 (Ill. App. Ct. 4th Dist. 1995) and 760 ILL. COMP. STAT. 65/4). "A thing is done 'in good faith' within the meaning of [FOA] when it is in fact done honestly." 760 ILL. COMP. STAT. ANN. 65/1(2) (West 2007).

This court is not persuaded that there is an inherent conflict between FOA's requirement that a bank proceed "honestly" and the Illinois UCC's requirement that a bank's actions be "honest[ ] in fact and [observe] reasonable commercial standards of fair dealing." In other words, there is no reason that a bank's actions could not satisfy *both* requirements, and the court is not persuaded that FOA's good faith requirement affects or changes the Illinois UCC's good faith requirements in any way.

Ultimately, the question of whether Chase proceeded in bad faith must be analyzed by comparing Chase's actions with "reasonable commercial standards of fair dealing." As discussed in detail below, MAL is generally entitled to discovery on this issue and has adequately pled its affirmative defenses on this basis. Viewing the allegations in the light most favorable to MAL, the court finds it is plausible that Chase could have violated reasonable commercial standards of fair dealing if it knew that Levenfeld was acting as MAL's fiduciary, it recognized the indicia of a "Nigerian" or "419" check scheme, and it deliberately refrained from investigating further while making provisional funds available to MAL for withdrawal—depending, of course, on what reasonable commercial standards prescribe under these circumstances.

7

2. Count IV

Chase separately argues that MAL's affirmative defenses cannot defeat Count IV of its First Amended Complaint, because this count arises under Article 4A of the Illinois UCC and the official commentary to Article 4A states that "resort to principles of law or equity outside of Article 4A is not appropriate to create rights, duties and liabilities inconsistent with those stated in this Article." 810 ILL. COMP. STAT. ANN. 5/4A-102, cmt (West 1993). On December 23, 2008, this court denied Chase's "Motion for Partial Summary Judgment as to Count IV of the First Amended Complaint," noting that "the prudent procedure should be to allow the responding party a full opportunity to examine the facts." (12/23/08 Hr'g Tr. at 5:23-25.) Because MAL will be permitted to seek discovery regarding Chase's good faith efforts in relation to Counts II and III, the court finds no prejudice in permitting Count IV to proceed along with the other claims according to schedule. At the close of discovery, with the full record before it, the court will be in a better position to assess whether MAL's affirmative defenses to Count IV seek "to create rights, duties and liabilities inconsistent with those stated in [Article 4A]."

3. Adequacy of Pleadings

Chase further argues that MAL's affirmative defenses must be stricken because they do not raise matters "outside the scope of Chase's case." (Pl.'s Mem. at 8) (citing *Renalds*, 119 F. Supp. 2d at 803). The court in *Renalds* noted that some courts in this district have found that a "negative defense," such as an argument that the plaintiff has failed to state a claim for relief, "is not a proper affirmative defense" and should instead be raised in a separate motion. *Renalds*, 119 F. Supp. 2d at 803. However, MAL's affirmative defenses are generally "more than a mere denial" that Chase can prove its claims. *Rudzinski*, 2007 WL 2973830, at *2. Rather, MAL

affirmatively alleges that Chase recognized the indicia of a "Nigerian" or "419" scheme and processed the Check regardless of this knowledge, in bad faith. Because MAL's affirmative defenses do raise matters outside the scope of Chase's claims, the court declines to strike MAL's affirmative defenses on these grounds.

MAL further alleges that Chase proceeded in bad faith by "misrepresenting to MAL on Chase's website or through its agents that the Check had 'cleared'" (Facts Common to All Defenses ¶ 2(i)); "providing a 'provisional settlement' or 'customer float' to MAL on the Check without advising or explicitly warning MAL that Chase was doing so [. . . ] in violation of Chase's internal protocol, policies, procedures and training manuals" (*Id.* ¶¶ 2(ii), (vii)); and "failing to timely revoke the wire transfer from MAL's account to the Japanese bank upon learning that the Check was 'illegitimate'" (*Id.* ¶ 2(v)). Whether these actions comported with "reasonable commercial standards of fair dealing" is a question that can best be answered after the close of discovery. At this point in the proceedings, MAL's allegations are sufficient to put Chase on notice of the factual foundation for its affirmative defenses. No more is required.

A.   The First Affirmative Defense (Unclean Hands/*In Pari Delicto*)

Chase argues that MAL's affirmative defense of unclean hands/*in pari delicto* has not been properly alleged because MAL "has not alleged that Chase had equal knowledge, let alone any knowledge [regarding the Check's relationship to] a payment agent relationship established over the internet between MAL and an unknown entity in Hong Kong." (Pl.'s Mem. at 11.) Under Illinois law, the doctrine of *in pari delicto* generally stands for the proposition that "a plaintiff who has participated in wrongdoing may not recover damages resulting from the wrongdoing." *Vine Street Clinic v. HealthLink, Inc.*, 856 N.E.2d 422, 436 (Ill. 2006)

9

(paraphrasing *King v. First Capital Fin. Servs. Corp.*, 828 N.E.2d 1155 (2005)). The doctrine applies where the parties "are of equal knowledge, wilfulness and wrongful intent." *Id.* Although MAL has not alleged that Chase had the *same* knowledge as Levenfeld regarding MAL's payment agent relationship, MAL has alleged that Chase recognized indicia of a "Nigerian" or "419" scheme—knowledge that could be considered *equal* to the knowledge possessed by Levenfeld in relation to the unauthorized deposit, depending on the fully-developed record. MAL has alleged enough facts to put Chase on notice of its affirmative defense and to state a plausible right to relief. No more is required at this stage in the proceedings.

B.  The Second Affirmative Defense (Estoppel)

The defense of equitable estoppel applies where a defendant demonstrates (1) the plaintiff misrepresented or concealed material facts; (2) the plaintiff had actual or implied knowledge at the time the representations were made that the representations were untrue (or that the misrepresentations were made with gross negligence as to their truth); (3) the defendant did not know that the representations were untrue when they were made and when they were acted upon; (4) the plaintiff intended or reasonably expected that the defendant or the public generally would act upon the representations; (5) the defendant reasonably and in good faith relied upon the representations to his or her detriment; and (6) the defendant would be prejudiced by his or her reliance on the representations if the plaintiff is permitted to deny the truth thereof. *County of Kendall v. Rosenwinkel*, 818 N.E.2d 425, 436-37 (Ill. App. Ct. 2d Dist. 2004). As this court has previously explained, "[b]ecause estoppel is premised on a showing of intentional deception or gross negligence amounting to constructive fraud, this defense (like fraud), requires a recitation of adequate factual underpinnings for consideration of the applicability of the

doctrine." *Household Fin. Servs., Inc. v. Ne. Mortgage Inv. Corp.*, No. 00 C 0667, 2000 WL 816795, at *2 (N.D. Ill. June 22, 2000). Chase argues that MAL has not met this burden of pleading.

In its Second Affirmative Defense, MAL states that it "relied on Chase's representation in good faith, and has suffered loses [sic] as a result." (2d Affirmative Defense ¶ 2.) However, MAL does not articulate in this paragraph any specific "representation" to which it refers. In its response brief, MAL directs the court to its allegation that Chase misrepresented to MAL that the Check had cleared when it had not. (Def.'s Resp. at 11) (*see* Facts Common to All Defenses ¶ 2(i)). Additionally, MAL has alleged that Chase "did nothing" in the face of a recognizable check fraud scheme. (2d Affirmative Defense ¶ 2.) Viewing the pleading in the light most favorable to MAL, this language can plausibly be read to allege that Chase concealed material facts regarding the legitimacy of the Check, such as the indicia recognized by Chase which suggested a check fraud scheme at work. These allegations "provide a sufficient notice of the factual support for the application of estoppel" against Chase. *Household Fin. Servs., Inc.*, 2000 WL 816795, at *2. Once the record has been fully-developed, Chase is free to argue that the doctrine of equitable estoppel should not be applied in this case.

Chase also argues that the defense of equitable estoppel has been displaced by the Warranties imposed under 810 ILL. COMP. STAT. 5/3-416 and 810 ILL. COMP. STAT. 5/4-207. However, Chase fails to explain further how *Chase's* representations to MAL are governed by these statutory provisions. These provisions appear to articulate the circumstances under which Chase is authorized to rely on MAL's representations—not the other way around. Without more on this point, the court declines to strike MAL's Second Affirmative Defense on this basis.

C.   The Third Affirmative Defense (Inadequate Notice)

MAL has also alleged that Chase is liable for any loss caused by its delay in sending notice of non-payment or dishonor to MAL. (3d Affirmative Defense ¶ 3.) Chase argues that "a notice requirement under the UCC is part of CHASE's *prima facie* case for MAL's breach of the UCC Warranties," thus the Third Affirmative Defense should be stricken for failing to raise matters outside the scope of Chase's claims. (Pl.'s Mem. at 12) (citing 810 ILL. COMP. STAT. 5/4-207(d), -208(e) and Def.'s Ans. ¶ 46). While it may be true that Chase bears this burden as to Count II, the court declines to determine on the basis of the pleadings alone whether MAL's affirmative defense is necessarily barred as it may apply to Counts I, III and IV. The court further notes there is no prejudice in moving forward with this affirmative defense, as both parties acknowledge that the question of proper notice is already at issue in this case through Chase's claims.

D.   The Fourth Affirmative Defense (Set-off/Recoupment/Unjust Enrichment)

MAL next alleges that Chase's recovery must be reduced by "the financial benefits which Chase has realized, directly or indirectly, and by losses cause by its bad faith acts." (4th Affirmative Defense ¶ 4.) Chase argues that set-off and recoupment are only appropriate where a defendant has asserted an independent claim for recovery against the plaintiff. (Pl.'s Mem. at 13) (citing *Bartashnik v. Bridgeview Bancorp, Inc.,* No. 05 C 2731, 2005 WL 3470315, at *4 (N.D. Ill. Dec. 15, 2005)). MAL does not respond to this argument, and the court finds, as in *Bartashnik*, that these defenses are not appropriate where MAL "do[es] not claim that any counter demand has been made." *Bartashnik*, 2005 WL 3470315, at *4. MAL also does not respond to Chase's argument that "unjust enrichment has no application" in the context of an

express contract. (Pl.'s Mem. at 13) (citing *B&B Land Acquisition, Inc. v. Mandell*, 714 N.E.2d 58, 63 (Ill. App. Ct. 2d Dist. 1999)). MAL's Fourth Affirmative Defense is therefore stricken in its entirety.

E.    The Fifth Affirmative Defense (Failure to Mitigate Damages)

Chase next argues that it had no duty under the Illinois UCC to mitigate damages by "tracking down and/or recovering the subsequently wired funds," as alleged in MAL's Fifth Affirmative Defense. (5th Affirmative Defense ¶ 5.) However, MAL has also alleged that Chase failed to take any other action that would have prevented loss to both MAL and Chase once "a pattern emerged that would have signaled to any minimally responsible bank that a 419 scheme was being perpetrated on one of its customers." (*Id.*) At this point in the proceedings, on the basis of the pleadings alone, the court declines to determine whether MAL's Fifth Affirmative Defense has been supplanted by any specific provisions of the Illinois UCC. *See* 810 ILL. COMP. STAT. ANN. 5/1-103 (West 1993 & Supp. 2008); 810 ILL. COMP. STAT. ANN. 5/4A-102, cmt (West 1993). MAL's defense has been adequately pled to put Chase on notice of its claim that Chase could have acted to prevent the Check's deposit, prevent the wire transfer, and/or recover the wired funds. Chase's arguments are better addressed on the basis of a complete record.

F.    The Sixth Affirmative Defense (Failure of Consideration/Bad Faith)

In its Sixth Affirmative Defense, MAL argues that Chase's breach of contract claim is barred "for lack of consideration." (6th Affirmative Defense ¶ 6.) Chase correctly argues that, as the plaintiff, Chase bears the burden of establishing that it provided adequate consideration under the terms of the "Account Rules and Regulations." (Pl.'s Mem. at 13) (citing *Worner*

13

*Agency, Inc. v. Doyle*, 479 N.E.2d 468, 472 (Ill. App. Ct. 4th Dist. 1985)); *see also Catania v. Local 4250/5050 of Commc'ns Workers of Am.*, 834 N.E.2d 966, 971 (Ill. App. Ct. 1st Dist. 2005) (plaintiff must prove that it performed all of its contractual duties). Because Chase's compliance with the contract's conditions precedent is already at issue in this case, and MAL has no burden in this regard, MAL's Sixth Affirmative Defense is stricken because it does not actually set forth an affirmative defense.

G.   The Seventh Affirmative Defense (Waiver)

Finally, MAL argues that "Chase waived any future right to challenge the funds Chase now demands MAL reimburse" because "Chase affirmatively communicated on its website to MAL that the underlying Check had cleared, [ ] that the corresponding funds had been made available to MAL free of any encumbrances or conditions, [ ] that the funds now belonged to MAL solely, and that any interest Chase had in those funds had been finally transferred to MAL's account."  (7th Affirmative Defense ¶ 7.)  Whether Chase "knowingly intended to relinquish [its] right to sue," (Pl.'s Mem. at 14) (quoting *Shonac Corp. v. Hornsby's Stores, Inc.*, No. 85 C 0578, 1985 WL 1839, at *2 (N.D. Ill. June 13, 1985)), is a question of fact best answered after the completion of discovery.  At that time, the court will have before it the exact language used by Chase on its website and the context in which this language was used.

## CONCLUSION

For the reasons set forth above, plaintiff JPMorgan Chase Bank's Motion to Strike Defendant MAL Corporation's Affirmative Defenses (Dkt. No. 79) is granted in part and denied in part.  MAL's Fourth and Sixth Affirmative Defenses are stricken, because they do not adequately set forth affirmative defenses to Chase's claims.  MAL's First, Second, Third, Fifth,

and Seventh Affirmative Defenses remain pending.

ENTER:

*James F. Holderman*
JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date: March 26, 2009